Alena Ericksen
390 East 400 South
Centerville, UT 841014
8ericksens@gmail.com


Mikel Brown
2942 Foss Circle
Bountiful, UT 84010
mike.brown@raindroppers.com

FILED US District Court-UT
NOV 16 '21 PM 02:53

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION No. |
| Alena Ericksen, *sui juris*. a woman | § | |
| | § | |
| Mikel Brown, *sui juris,* a man | § | **PETITION FOR** |
| | § | **DECLARATORY JUDGEMENT** |
| *Plaintiffs,* | § | *AND* **VERIFIED CLAIM FOR** |
| | § | **DAMAGES** |
| vs. | § | |
| | § | |
| | § | Case: 1:21-cv-00153 |
| | § | Assigned To : Pead, Dustin B. |
| | § | Assign. Date : 11/16/2021 |
| Reid Newey, a man | § | Description: Ericksen et al v Newey et al |
| John Robison, a man | § | |
| Marie Stevenson, a woman | § | |
| Liz Mumford, a woman | § | |
| Julie Tanner, a woman | § | |
| Brigit Gerrard, a woman | § | |
| Gordon Eckersley, a man | § | |
| Cheryl Phipps, a woman | § | |
| Davis School District, a corporation, | § | |
| | § | |
| *Defendants.* | § | |

# DO NOT TRESPASS ON THIS CASE!

# PETITION FOR DECLARATORY JUDGEMENT AND CIVIL CLAIM FOR DAMAGES

*NOW COMES* Alena Ericksen, et al., hereinafter referred to as "Plaintiffs," in this court of record, being of the people of Utah neither in the capacity as citizens of the STATE OF UTAH nor as citizens of the United States, to freely exercise their right to a trial by jury in a suit at common law guaranteed to them by the seventh amendment to the United States Constitution. Plaintiffs move the court to consider this civil action in the form of a "private Attorney General" as Plaintiffs are suing on their own behalf and on behalf of all others similarly situated. Plaintiffs will show that Plaintiffs were subjected to deprivation of rights secured by the United States Constitution. Plaintiffs will show that said deprivation of constitutionally secured rights amounted to predicate acts, practiced and participated in, by all Defendants who are public servants and who exceeded their authority granted to them by We the People. Plaintiffs will further show that the above referenced combination amounted to a carefully crafted criminal enterprise, organized, and orchestrated by Defendants toward the outcome of depriving Plaintiffs, and others similarly situated, of their constitutionally secured rights in order to secure federal funding; and to seek publicity, favors, and political positions of power to the detriment of all Plaintiffs and all similarly situated Utahns.

# I.  INTRODUCTION

The basis for this suit began more than 18 months ago, on or around March of 2020. At that time, the Executive Branch of Utah broadcasted via public television, print media, and social media channels to Plaintiffs, and all other Utahns, that there was an alleged public emergency due to an alleged new virus, dubbed 'SARS-CoV-2' or 'COVID-19.' The Executive Branch gave no verified scientific proof to support their claim of a public emergency. Nevertheless, Defendants acting on the claim of a 'public emergency' chose to impose unwarranted and unlawful authority, without a court order, over Plaintiffs and Plaintiffs' property [Offspring] using this supposed 'public emergency' as their justification to do so. Even if Defendants had given "verified scientific proof" that this alleged new 'virus' warranted such extreme measures, the United States Constitution governs all of their actions and prohibits Defendants, who are public servants, from taking extreme actions that would violate Constitutionally protected rights of Plaintiffs.

Nevertheless, and notwithstanding the aforementioned, Defendants issued a number of "orders" via published documentation which they claimed gave them jurisdiction over Plaintiffs and their property, aimed at limiting Constitutionally secured rights of Plaintiffs and Plaintiffs' property and all other Utahns similarly situated in order to 'slow the spread' of this alleged new 'virus'. Defendants failed to give any verifiable scientific proof that this alleged new 'virus' warranted any of their suggested remedies which included suspending Constitutionally secured rights, quarantining the healthy, and forcing medical interventions up to and including mandatory testing and facial coverings in order to enter or participate in public school accommodations, athletics, and activities.

Plaintiffs, Plaintiffs' property, and all others similarly situated, were considered sick until proven healthy. Defendants' unwarranted mitigation efforts included: "social distancing measures (no scientific data was given, nor has any been given to date to support that this measure had/has any effect in slowing the spread of this alleged new 'virus')", "face coverings/masks (again, no scientific data was given nor has any been given to date to support that this measure had/has any effect in slowing the spread of this alleged new 'virus')", "quarantining without a proper diagnosis by a medical professional (again, no scientific data was given nor has any been given to date to support that this measure had/has any effect in slowing the spread of this alleged new 'virus')," and forced diagnosis by personnel who carry no medical license and are not trained to diagnose or treat a potentially communicable disease. Furthermore, Defendants required compliance to these extreme measures by using force, threat, and duress, using law enforcement and local health department agencies within the state to enforce said "orders" under color of law and with the threat of fines, fees, and/or suspending access to public school accommodations without a lawful court order to do so.

Starting on or about June of 2021, Plaintiffs exercised their First Amendment rights to seek a redress of grievances from their government by petitioning the Defendants, who are public servants having issued said 'orders', using verified, notarized, legal affidavits, to make Defendants aware that they were stepping outside of their Constitutional authority granted to them by We the People of Utah. Plaintiffs sent Defendants multiple affidavits at several different times, to bring awareness to Defendants of the harm and damages that did and could put Plaintiffs and their property at risk of harm by the actions of the Defendants. All the affidavits went unanswered.

Moreover, Plaintiffs sent affidavits titled the "*Affidavit of Status*" which rebutted any presumption of jurisdiction over Plaintiffs and their property; the "*Affidavit of Fact*" which rebutted the extreme measures Defendants implemented and executed and notified Defendants that they could potentially be in violation of state and federal law; and the "*Notice of Claim*" that carried with it financial penalties if Defendants chose to ignore these notices and affidavits; again attempting to seek a civil redress of their grievances, but Defendants chose to ignore all of these lawful documents. In all, Plaintiffs sent 12 different affidavits/notices which, as beneficiaries of the trust indenture, *required* a response if Defendants disagreed with anything in said affidavits/notices and pursuant to the common law Maxim of Commerce: ***All are equal under the law, in commerce truth is sovereign, truth is expressed in the form of an affidavit, an unrebutted affidavit stands as truth in commerce, an unrebutted affidavit becomes the judgment in commerce, sacrifice is the measure of credibility.*** Defendants chose to ignore *ALL* affidavits and notices and, pursuant to the common law maxim: ***He who does not deny, admits;*** by their silence and inaction have tacitly agreed to the facts and claims stated therein, and therefore pursuant to Fed.R.Civ.P. 8(b)(6) are estopped from objecting to the information contained within the affidavits and the claims made against them. These affidavits now stand as fact as a matter of law. As a result of Defendants inaction to the affidavits and notices, Plaintiffs' constitutionally protected rights were violated, and Plaintiffs were harmed by Defendants' actions.

This suit is a FINAL attempt and constitutes a 1st Amendment petition for redress of grievances protected by the United States Constitution. Plaintiffs move this Honorable Court to GRANT this petition and claim.

## **CLAIM**

*NOW COMES* Plaintiffs, Alena Ericksen, a woman; Rebecca Hope, a woman; and Mikel Brown hereinafter ("Plaintiffs"), for their Complaint seeking judgment against Defendants Reid Newey ("Superintendent of Davis School District"), John Robison ("President Board Member"), Marie Stevenson  ("Board Member"), Liz Mumford ("Board Member"), Julie Tanner ("Board Member"), Brigit Gerrard ("Board Member"),  Gordon Eckersley ("Board Member"), and Cheryl Phipps ("Board Member"), collectively the "Defendants," respectfully state the following: and the Davis School Board of Education ("a Corporation"), collectively the "Defendants", respectfully state the following:

## JURISDICTION AND VENUE

1. This court has federal question jurisdiction over Plaintiffs 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

2. This court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiffs claims occurred in the District of Utah.

4. The rules governing this action are, in order of superiority:

    a. The rules of the common law;

    b. The Federal Rules of Civil Procedure;

    c. The District of Utah Court Civil Rules of Procedure;

    d. The Federal Rules of Evidence;

5. Plaintiffs are NOT members of the B.A.R. Association and are not under oath or contract to strictly follow the rules of civil procedure. Furthermore, the courts have held that

action that is brought by sovereign individuals, in their *sui juris* capacity, is not to be held to the same high standards as action brought by licensed attorneys. All that is required is that the pleading be in a format that "*any reasonable person could understand*" which this pleading conforms to.

## NATURE OF CLAIM

4. This action arises under 42 U.S.C. § 1983 to redress deprivations of Plaintiffs' rights through acts and/or omissions of Defendants committed under color of law. Specifically, defendants deprived Plaintiffs of their rights under the First, Fourth, Fifth, Sixth, Seventh, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution for the United States of America.

5. Additionally, Plaintiffs rely upon the Court's pendent jurisdiction to assert the Utah state claims of assault, reckless endangerment, extortion, coercion, criminal impersonation, and forgery.

## PARTIES

6. Plaintiffs live, and have at all relevant times lived, on the geographic land mass called *Utah.*

6. Reid Newey, a man, has been, at all relevant times pertaining to this suit, employed as Superintendent of Davis School District ("DAVIS SCHOOL DISTRICT"). Reid Newey's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Reid

Newey acted under color of state law. Reid Newey is sued in his individual and official capacity.

7.  John Robison, a man, has been, at all relevant times pertaining to this suit, employed as President Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). John Robison's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, John Robison acted under color of state law. John Robison is sued in his individual and official capacity.

8.  Marie Stevenson, a woman, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Marie Stevenson's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Marie Stevenson acted under color of state law. Marie Stevenson is sued in her individual and official capacity.

9.  Liz Mumford, a woman, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Liz Mumford's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Liz Mumford acted under color of state law. Liz Mumford is sued in her individual and official capacity.

10. Julie Tanner, a woman, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Julie Tanner's job is bound and limited by the Constitution for the United States of America, by the

Utah Constitution, and by state and federal statutes. At all times alleged herein, Julie Tanner acted under color of state law. Julie Tanner is sued in her individual and official capacity.

11.     Brigit Gerrard, a woman, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Brigit Gerrard's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Brigit Gerrard acted under color of state law. Brigit Gerrard is sued in her individual and official capacity.

12.     Gordon Eckersley, a man, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Gordon Eckersley's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Gordon Eckersley acted under color of state law. Gordon Eckersley is sued in his individual and official capacity.

13.     Cheryl Phipps, a woman, has been, at all relevant times pertaining to this suit, employed as Board Member of Davis School District ("DAVIS SCHOOL DISTRICT"). Cheryl Phipp's job is bound and limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Cheryl Phipps acted under color of state law. Cheryl Phipps is sued in her individual and official capacity.

7.     The Davis School District, a corporation, has been, at all relevant times, acting as the Davis School District ("Davis School District"). Davis School District's job is bound and

limited by the Constitution for the United States of America, by the Utah Constitution, and by state and federal statutes. At all times alleged herein, Davis School District acted under color of state law. The Davis School District is sued in its official status.

## PLAINTIFFS' STATUS

8.  The status of each of the Plaintiffs is *"sui juris"*, not *"pro se"* or *"pro per."* Plaintiffs are human beings and therefore are NOT, nor could NOT be, *statutory persons nor artificial persons*. Plaintiffs reserve all rights, waiving none ever. (See Exhibit A for further clarification).

## REQUEST FOR ALTERNATIVE SERVICE

9.  Inasmuch as Defendants, though sued in their individual capacities, are public officials, Plaintiffs request leave of the court to allow service of all Defendants at their places of public employment. Plaintiffs do not have the home address of any public official, and will not seek the same unless required to give personal service to said Defendants' homes

## REQUEST OF GRAND JURY EMPANELMENT

10. Plaintiffs respectfully request that this court empanel a Grand Jury for the purpose of investigating the crimes uncovered in this matter.

## STATEMENT OF FACTS

11. Plaintiff's exhibits are included by reference as though fully stated herein. (See list of exhibits).

12. On or about March of 2020, The Executive Branch of Utah issued an emergency order based on an alleged new 'virus' dubbed the 'SARS-CoV-2' or 'COVID-19' virus.

13. The Executive Branch gave no verified scientific proof to support their claim of a public emergency.

14. The Executive Branch gave no verified scientific proof to support their claim that this alleged new 'virus' even existed. (*It should be noted that to this day this 'new virus' or any of its supposed variants have not been isolated to prove its existence.*)

15. As a result of the Executive Branch's state of emergency and subsequent order, schools were ordered closed for in-person learning for the remainder of the 2019-2020 school year.

16. Plaintiffs and their property had a reasonable expectation to be able to finish the school year unmolested.

17. Defendants ordered that the schools were to be closed for in-person learning for the remainder of the 2019-2020 school year.

18. As a result of the school closures, Plaintiffs' properties' right to access public school accommodations were violated.

19. Plaintiffs were forced to accept these closures at the time under duress.

20. On or about June 29, 2020, Defendants published their requirements for the reopening of Utah schools titled "School Reopening Requirements Template."

21. This template outlined the requirements set forth by Defendants for Utah school districts to reopen their schools to Utah students and to Plaintiffs' property [Offspring].

22. Local school districts were required to submit their acceptance to this reopening plan to Defendants no later than August 1, 2020.

23. Defendants required that these requirements be followed strictly by Utah school districts, students, Plaintiffs, and Plaintiffs' property.

24. At no time did Defendants have jurisdiction over Plaintiffs or Plaintiffs' property nor did Defendants have a court ordered judgement against Plaintiffs that would authorize the actions taken by Defendants.

25. Defendants acted outside of their authority given to them by We The People.

26. As a condition of in person learning, Defendants required that Utah students and Plaintiffs' property be required to social distance in classrooms, wear masks at all times, and quarantine ("mitigation efforts") when the threshold of the number of allowable confirmed cases was above the allowable number set per school.

27. Defendants produced no court order to support these measures.

28. Defendants and their subordinates hold no license to practice medicine as is required by state law.

29. Defendants and their subordinates have no formal training necessary to be able to diagnose or treat a potentially communicable disease.

30. Defendants required protected medical information under the Health Insurance and Portability Accountability Act (HIPAA) when Utah students and Plaintiffs' property sought an exemption to these "mitigation efforts."

31. Plaintiffs' property, and other Utah students similarly situated, were subjected to discrimination when granted an exemption from the "mitigation efforts."

32. Plaintiffs' property, and other Utah students similarly situated, had reasonable expectations that reasonable accommodations would be granted as is required by state and federal law.

33. However, Defendants required that Plaintiffs' property and other Utah students who could not/would not abide by these "mitigation efforts" not be allowed to access public school accommodations and would be required to participate in online/at home learning.

34. Under duress and threat of menace, Plaintiffs and Plaintiffs' property accepted the "mitigation efforts."

35. Beginning on or about July 8, 2021, Plaintiffs attempted a civil redress of their grievances.

36. On or about July 2021, Plaintiffs sent an Affidavit packet to Defendants alleging that Defendants could be in violation of clearly established state and federal laws.

37. Plaintiffs' *Affidavit of Status* (Exhibit B) notified Defendants of Plaintiffs' status and rebutted any presumption of jurisdiction that Defendants claimed to have had over Plaintiffs.

38. Plaintiffs' *Affidavit of Fact* (Exhibit C) notified Defendants of the alleged laws that Defendants could be in violation of and required the obligation [contract] with Plaintiffs' wet signature granting Defendants the authority to impose the "mitigation efforts" on Plaintiffs and Plaintiffs' property.

39. Plaintiffs' *Notice of Claim* (Exhibit D) notified the Defendants of the potential financial penalties for non-reply to the aforementioned *Affidavit of Status* and *Affidavit of Fact*.

40. Plaintiffs gave adequate notice and time for Defendants to respond to Plaintiffs' affidavits with their own affidavits and allowed Defendants time to rebut said affidavits, point for point.

41. Plaintiffs received no such affidavits.

42. Plaintiffs' received a letter on or about July 2021 from Defendants counsel advising Plaintiffs that Defendants had 60 days to respond to Plaintiffs' affidavits pursuant to Utah State law.

43. 60 days have since passed, still no response from Defendants.

44. Administrative remedy has been exhausted.

45. On or about August, 2021, Plaintiffs mailed a citizen's criminal complaint, signed under penalty of perjury, to the local District Attorney of Salt Lake County, Sim Gill, the Attorney General of Utah, Sean Reyes, and to the local special agent in charge for the FBI field office in Salt Lake City.

46. Plaintiffs' citizen's criminal complaint asked that a Grand Jury be empaneled to investigate the allegations set forth in the complaint. (see Exhibit E)

47. To date, no known investigation has taken place.

48. Defendants have shown no attempt to resolve the grievances of Plaintiffs. (see Exhibit F)

49. Defendants have shown no attempt to change their ways. (see Exhibit F)

50. Defendants are in default of Plaintiffs' *Affidavits* and *Notice of Claim*.

51. Plaintiffs' *Affidavits and Notices* stand as fact as a matter of law according to the rules of common law.

52. Plaintiffs are entitled to relief under 42 U.S.C. Section 1983.

## LIST OF EXHIBITS

A.  Plaintiff's Status Addendum

B.  Plaintiff's Affidavit of Status

C.  Plaintiff's Affidavit of Fact

D.  Plaintiff's Notice of Claim

E.  Plaintiff's Criminal Complaint

F.  Additional Statement of Facts

## FIRST CAUSE OF ACTION: DECLARATORY JUDGEMENT AND FEDERAL QUESTION

83. Plaintiffs adopt and reallege paragraphs 1 through 81 of this complaint as though fully stated herein.

84. The Defendants did on various occasions in the various months of March-December 2020, which continues to this day, enforce mandates under the color of law that have not been properly enacted by the State of Utah to enforce upon and extinguish the rights of the Plaintiffs, to the bitter end of forcing Plaintiffs into involuntary servitude. The mandates enforced by the Defendants have not been enacted by the State of Utah according to the provisions of Article 4, section 26 of the Utah Constitution.

85. The Defendants trespassed upon Plaintiff's rights, without due process of law, without probable cause and without a proper warrant, to deprive the Plaintiffs of their rights and rights to their property.

86. To make a civil infraction out of the use of, and the right to, access public accommodations, is an arbitrary and capricious abuse of legislative discretion, without due process of law, such conduct is a direct assault on the Plaintiff's rights without consideration and in disregard of the facts.

87. On or about August 2020 to June 2021, the Defendants did deny rights clearly belonging to Plaintiffs, under the guise of enactment of state laws and federal laws, among others, without just compensation.

88. **1st Federal Question:** When in the course of the business affairs of Defendants, coming against the rights belonging to Plaintiffs, are the Defendants subject to the Utah Constitution and the United States Constitution? Plaintiffs contend yes, but Defendants did not.

89. Therefore, the Plaintiffs are entitled to injunctive relief against Defendants, to enjoin the Defendants from enforcing unconstitutional actions against Plaintiffs.

90. **2nd Federal Question:** Must laws enacted by the State of Utah and adopted by the Defendants, be in compliance with Article 4 section 26 of the Utah Constitution? Plaintiffs contend yes but said laws have not been properly enacted by the state for the Defendants to adopt.

91. Therefore, the Plaintiffs are entitled to injunctive relief against Defendants, to enjoin the Defendants from enforcing unconstitutional laws against Plaintiffs.

92. **3rd Federal Question:** Must the Defendants comply with Utah law, Federal law, the United States Constitution and the Utah State Constitution? The Plaintiffs contend yes, but Defendants did not.

93. Therefore, the Plaintiffs are entitled to injunctive relief against Defendants, to enjoin the Defendants from enforcing unconstitutional actions against Plaintiffs.

Wherefore, Plaintiffs request judgment against Defendants.

## COUNT 1: VIOLATION OF 42 U.S.C. SECTION 1983
### (FREEDOM OF RELIGION, FREEDOM OF SPEECH, RIGHT TO BE SECURE IN PERSONS AND PAPERS, DUE PROCESS AND EQUAL PROTECTION CLAUSES, INHERENT RIGHT TO ACCESS PUBLIC ACCOMODATIONS)

94. Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 93 above with the same force and effect as if herein set forth.

95. At all relevant times herein, Plaintiffs and Plaintiffs' property had a right to practice their religion as they saw fit, to speak freely without fear of retribution, to be secure in their persons and papers, a substantive right to access public school accommodations, and a right under the due process and equal protection clauses of the state and federal constitutions not to be deprived of their constitutionally protected interest in their property [Offspring]. *U.S.C. Const. Amends. 1, 4, 5, 9, 14*; *Utah. Const. Art. 1, Sec. 1, 4, 7, 15, 25, & 27.*

96. At all times relevant herein, the Defendants were state actors and their conduct was subject to 42 U.S.C. sections 1983, 1985, and 1988.

   "*Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions.*" *Dennis v. Sparks.* 449 U.S. 24, 27-28 (1980).

97. Acting under the color of law, Defendants worked to deny Plaintiffs and Plaintiffs' property their rights, privileges, or immunities secured by the United States Constitution or by Federal and State law and guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States, to wit, they sought and got compliance to their orders based on their misrepresentations.

*Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997); *McNamara v. Honeyman*, 406 Mass. 43, 52 (1989).

98. As a result of Defendants' concerted, unlawful, and malicious conduct, Plaintiffs were both deprived of their rights to equal protection of all the laws and to due process of law, of their right to govern their property as they saw fit, their right to be secure in their persons and papers, their right to access public school accommodations, all in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Sec. 1983.

99. Plaintiffs' property [Offspring] were harmed, Plaintiffs have incurred considerable debt which would not otherwise have been incurred and has suffered the loss of confidence in and feelings of betrayal by the Utah educational system, shock, emotional distress, psychological damage, embarrassment, loss of irreplaceable life events, academic achievement hinderance, and other damages.

100. The rule is well settled, however, that if the natural consequence of the wrongful act, done willfully or with gross negligence, is mental suffering to the Plaintiffs, then that element may be considered in assessing damages.

*Stiles, 233 Mass. at 185, cites omitted. "Good faith and absence of malice in the perpetration of such a palpable wrong to the plaintiff constitute no defense to the defendants against the almost inevitable effect of their acts." Id.*

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,001,776.00 and further demands judgment against all Defendants, jointly and severally, for

additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

"*Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights.*" ***Smith v. Wade***, 461 U.S. 30, 50-51 ((1983); ***Clark v. Taylor***, 710 F.2d 4, 14 (1st Cir. 1983). <u>Miga</u>, *supra* at 355.

## COUNT 2: VIOLATION OF 42 U.S.C SECTION 1985 (3)<br>(CONSPIRACY)

101. Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 86 above with the same force and effect as if herein set forth.

102. The conspiratorial purpose was financial.

103. On or around June of 2020, the first step in the conspiracy was taken when the Utah State Board of Education met to draft their plan for the reopening of Davis schools later that fall to be in compliance with the CARES Act funding requirements, at the detriment of Utah students and Plaintiffs' property.

104. By misrepresenting the details of the "School Reopening Requirements" as having the safety and well-being of the students as the motivation for this plan, Defendants defrauded Plaintiffs' property of their right to be secure in their persons and papers as Defendants motives were purely financial and not health related as they claimed.

105. Requirements of the CARES Act stated that certain measures had to be in place and practiced by local school authorities for the Defendants to receive federal funding that was offered to them under the guise of "COVID19" mitigating measures".

106. Defendants motivations were purely financial and no input from Plaintiffs or Davis parents similarly situated was taken into consideration.

107. The scheme of this conspiracy was (1) to disguise the reason for these "mitigation efforts" as concern for the students' health and safety, (2) implement said measures to the detriment of Plaintiffs' property and all other Utah students, (3) misrepresent that these measures were having any impact when in reality these measures were in place in order to secure millions of dollars from the federal government.

108. There was no data given, nor has any been given, to show that these "mitigation measures" had *any* effect in slowing the spread of the alleged new 'virus', yet Defendants continued to force these measures on Plaintiffs' property and all of the other Davis students.

109. Defendants stood to profit financially from intentionally withholding the underlying reasons these measures were implemented in Davis schools.

110. The above acts were some of the steps in the conspiracy to commit fraud, if not larceny, with the requisite *mens rea,* upon Plaintiffs.

111. The Defendants intentionally interfered with Plaintiffs and Plaintiffs' property's exercise and enjoyment of their clearly established rights secured by the state and federal constitutions or laws of the United States and/or the State of Utah, and thereby deprived them of those rights and caused them injuries.

112. As a result of the concerted, unlawful, and malicious conspiracy of all the defendants, Plaintiffs, being of the people were deprived of their rights to freedom of religion, freedom of speech, right to be secure in their persons and papers, right to access public school accommodations, and both due process and the equal protection of the laws in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. secs. 1983 and 1985.

## INVIDIOUS DISCRIMINATORY ANIMUS: THE DISPARATE IMPACT

In *Aulson v. Blanchard*, 83 F.3d 1, 4 (1996), Judge Selya wrote:
In all events, an unforced reading of Section(s) 1985(3) affords no principled basis for distinguishing between public and private conspiracies. *Griffin [v. Breckenridge*, 403 U.S. 88, 102 (1971)] neither supports nor suggests the existence of such a distinction, and, at any rate, it is not the proper province of a federal court to rewrite a statute under the guise of interpretation. Thus, we decline the plaintiff's invitation to create by judicial fiat two classes of Section(s) 1985(3) conspiracies along a public/private axis.

The problem with that court's conclusion is that it was inherently inconsistent with what it had written earlier in the same opinion, to wit, that the Supreme Court in *Griffin*, "under the guise of interpret[ing] 1985(3)]" [*Aulson*, at 4], had already "placed a gloss on these four elements, effectively adding a fifth requirement." *Aulson*, at 3. That fifth requirement: that "the conspiratorial conduct of which [the plaintiff] complains [must be] propelled by `some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. at 3, *quoting Griffin*, at 102.

Judge Selya's initial statement was correct: that "it is not the proper province of [any] court to rewrite a statute under the guise of interpretation." That is, however, what the Supreme Court in *Griffin* did. It is quite elementary: Had Congress intended a fifth element, it would have included it when the statute was enacted. To add the element, Smith contends, was improper, and in so adding it, the high Court was usurping the power of the legislature.

113. Plaintiffs were harmed, were caused to incur considerable debt for medical and educational services, and have been suffering from anxiety, feelings of hopelessness, loss of trust, loss of confidence in and feelings of betrayal by the educational system, shock, and emotional distress, psychological damage, loss of irreplaceable life events, academic struggles, and other damages.

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the defendants, jointly and severally, for actual, general, special, punitive damages in the amount of

$100,001,776.00 and further demands judgment against all defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## **COUNT 3: FRAUD BY OMISSION OR NON-DISCLOSURE**

114. Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 99 above with the same force and effect as if herein set forth.

115. When Defendants published and distributed their reopening plan under the guise of health and safety which they all knew to be neither true nor accurate, they were attempting to defraud Plaintiffs and other Utah parents similarly situated by non-disclosure.

116. In addition, the repeated misrepresentations caused Plaintiffs additional medical and educational expenses that were reasonably foreseeable as a possible result of the Defendant's intentional acts.

   "Common law fraud can be the basis for a claim of unfair or deceptive practices under the statute [cites omitted], and an intentional fraud can constitute a basis for the multiplication of damages." *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 714 (1990), *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975); *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 504 (1979). Certain misrepresentations to a plaintiff are actionable under both common law fraud and G.L. c. 93A. *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 704-705 (1992) citing *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass.App.Ct. 390, 411-412, 415-416 (1991).

117. The defendants are responsible not only for their outright untrue written and spoken statements, but also for untruthfully declaring that the "mitigation efforts" were working as intended to keep the fraud going as long as possible.

   *Kozdras v. Land/Vest Properties, Inc.*, 382 Mass. 34, 41 (1980) (where affiant, familiar with the actual facts, made "affidavit either with intent to defraud the Land Court or with such wilful disregard of the facts

as to be tantamount to fraud"). *Cf. Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77-78 (1991) (Where the plaintiff proves "a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge ... it is not necessary to make any further proof of an actual intent to deceive"), *quoting Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 444 (1975), quoting *Powell v. Rasmussen*, 355 Mass. 117, 118 (1969), in turn quoting *Chatham Furnace Co. v. Moffatt*, 147 Mass. 403, 404 (1888).

118.Plaintiffs were harmed and have been caused to incur considerable medical and educational expenses in order to treat their property and see that they continued to receive an education. Plaintiffs' property have been suffering from anxiety, a feeling of hopelessness, loss of trust, loss of confidence in and feelings of betrayal by the educational system, shock, and emotional scarring, all compensable as emotional distress, and other damages

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,001,776.00 and further demands judgment against all defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 4: COMMON LAW CONSPIRACY

119.Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 104 above with the same force and effect as if herein set forth.

120.All the Defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action, to wit, to deprive Plaintiffs of their right to the equal protection of the laws purposely or inadvertently; specifically, the right to practice their religion, the

right to freedom of speech, the right to be secure in their persons and papers, and their right to access public school accommodations; (c) performed one or more unlawful overt acts; and (d) caused Plaintiffs damages that were a direct result of those actions.

121. In furtherance of their object, Defendants did two or more overt acts against the Plaintiffs. Those unlawful overt acts include, but are not limited to, the facts outlined in Count 2, *supra*, conspiracy under section 1985(3).

122. All Defendants are liable for their actions. Ignorance of the law is not a defense.

123. Plaintiffs suffered harm and damages, as stated at par. 111, *supra*, as a direct result of those acts.

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,001,776.00 and further demands judgment against all defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 5: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

124. Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 109 above with the same force and effect as if herein set forth.

125. Davis School District continually and negligently inflicted emotional distress on the Plaintiffs and their property.

126. Davis School District had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Plaintiffs.

127. Davis School District breached their duties to Plaintiffs.

128. Plaintiffs nor Plaintiffs' property never interfered with Davis School District's obligations under the formerly described duties.

129. Plaintiffs' property suffered not only physical symptoms because of the physical injury, mentally by Davis School District's breach of duty.

130. Plaintiffs' property was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of Davis School District's actions.

131. As a result of Davis School District, Plaintiffs' property has suffered and will continue to suffer physical symptoms, such as severe, continuous headaches, suicidal thoughts, weight gain, pain, anguish, severe emotional trauma, embarrassment, and humiliation.

132. Defendants Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, continually and negligently inflicted emotional distress on the Plaintiffs and their property.

133. Defendants Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Plaintiffs.

134. Defendants Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, breached their duties to Plaintiffs.

135. Plaintiffs nor Plaintiffs' property never interfered with Defendants' Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, obligations under the above described duties.

136. Plaintiffs' property suffered not only physical symptomatologies but also, as a consequence of the physical injury, mentally by Defendants' Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, breach of duty.

137. Plaintiffs' property was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of Defendants Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman.

138. As a result of Defendants' Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, negligent conduct, Plaintiffs' property has suffered and will continue to suffer physical symptomatologies, such as severe, continuous headaches, suicidal thoughts, weight gain, pain, anguish, severe emotional trauma, embarrassment, and humiliation.

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,001,776.00 and further demands judgment against all defendants, jointly and severally, for

additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

139. Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 124 above with the same force and effect as if herein set forth.

140. Defendants  Reid Newey, a man; John Robison, a man; Marie Stevenson, a woman; Liz Mumford, a woman; Julie Tanner, a woman; Brigit Gerrard, a woman: Gordon Eckersley, a man; Cheryl Phipps, a woman, and the Davis School District intentionally and deliberately inflicted emotional distress on Plaintiffs' property by interfering with their civil rights and conspiring against them, thereby destroying their trust in the Utah educational system.

141. Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable.

142. The actions of the Defendants were the cause of Plaintiff's property's distress.

143.  Plaintiffs are reasonable people.

144. The emotional distress sustained by Plaintiffs' property was severe and of a nature that no reasonable man or woman could be expected to endure.

   *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976).

145. As a result of the Defendants' extreme and outrageous conduct, Plaintiffs' property have suffered and with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment, and humiliation.

**WHEREFORE**, Plaintiffs demand judgment for the violation of their civil rights against all the defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,001,776.00 and further demands judgment against all defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

*Respectfully submitted,*

Dated the _____ Day of _____, 2021.

### PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY AT COMMON LAW

**Plaintiff**, *sui juris*, NOT "Pro se" All rights reserved without prejudice.

**Plaintiff**, *sui juris*, NOT "Pro se" All rights reserved without prejudice.